# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | } | |
| | } | |
| BILL HEARD ENTERPRISES, INC., et al., | } | CASE NO. 08-83029-JAC-11 |
| | } | (Jointly Administered) |
| | } | |
| | } | CHAPTER 11 |
| Debtor(s). | } | |
| | | |
| BILL HEARD CHEVROLET | } | |
| CORPORATION-ORLANDO, | } | AP 09-80012-JAC-11 |
| | } | |
| Plaintiff | } | |
| v. | } | |
| | } | |
| GORDON BLAU, J. GORDON BLAU, P.A., | } | |
| GARY RILEY; CARLA SILVER AND | } | |
| STEPHAN SILVER | } | |

## MEMORANDUM OPINION

This case is before the Court on debtor's complaint for declaratory judgment and on motion for relief from the stay filed by J. Gordon Blau and J. Gordon Blau P.A. (collectively "Blau") individually and as counsel for Gary Riley ("Riley") and Carla Silver ("Silver") as individuals and as class representatives to proceed with an arbitration proceeding pending before arbitrator H. David Luff, arbitration case no. 01-0124001.

## FINDINGS OF FACT

Prior to the petition date, Silver and Riley (hereinafter "claimants") purchased vehicles from Heard Orlando, one of the debtors in the above styled jointly administered case. In 2001, the claimants initiated an arbitration proceeding against Heard Orlando and Fidelity & Deposit Co. of Maryland, the entity serving as the debtor's surety, in accordance with the terms of the arbitration

agreements between the claimants and the debtor. The claimants alleged in the proceeding that they suffered injuries as a result of the dealership's purported violation of the Florida Motor Vehicle Retail Sales Finance Act, FLA. STAT. § 520.01, *et seq.* Claimants sought to represent a putative class of persons having purchased vehicles from the debtor's Orlando dealership. Blau served as counsel for the claimants in the proceeding and the law firm of Latham, Shuker, Eden & Beaudine, LLP ("Latham") represented the debtor.

Prior to the petition date in April of 2008, Blau and Latham were working towards a settlement of the arbitration proceeding on a class basis to pay Riley and Silver $51,000.00, provide others in the class with remuneration in the form of a $100 coupon redeemable at Heard Orlando, and to pay Blau $1.1 million dollars as class counsel. The debtor transferred the settlement fee to Latham to hold in his client trust account.

On August 6, 2008, the parties submitted a joint Motion for Preliminary Approval of Class settlement to the arbitrator. On the same date, the arbitrator signed an order entitled "Class Action Settlement Preliminary Approval Order" approving the settlement, certifying the claimant class and requiring that notices be sent to class claimants.

At the debtor's request on August 22, 2008, Latham returned the settlement funds to the debtor. On August 28, 2008 the arbitrator signed an order requiring the debtor to "immediately transfer the settlement funds" to Blau's trust account pursuant to the parties' agreement. The debtor being on the verge of filing bankruptcy failed to comply with this order.

On September 15, 2008, the arbitrator signed an order granting claimants' motion for sanctions and found that the defendants had willfully violated the arbitrator's August 28, 2008 order by failing to remit the settlement proceeds to Blau. The arbitrator reserved jurisdiction to enter

2

sanctions against the debtor and Latham by future order after notice and hearing. On September 28, 2008, the debtors filed a petition for relief under Chapter 11 of the Bankruptcy Code and no further action has taken place in the arbitration proceeding.

Blau seeks relief individually and on behalf of Riley, Silver, and the claimant class to continue with the arbitration proceeding against the debtor and Fidelity.[1] Blau also seeks sanctions against Latham for possible violations of the rules regulating Florida Bar members for Latham's actions in returning the settlement proceeds to the debtor. To the extent either Fidelity or Latham are liable, Blau concedes such liability is the personal liability of such parties and that he will only look to such parties for damages and not to the settlement funds which the debtor argues are property of the estate.

On January 20, 2009, debtor filed a separate complaint for declaratory judgment against Blau, Riley and Silver seeking a declaration that the settlement funds constitute property of the debtor's Heard Orlando estate pursuant to § 541 of the Bankruptcy Code. On January 27, 2009, Blau filed a response in the underlying bankruptcy case in which Blau concedes that he does not seek to have the debtor turnover the pre-petition settlement funds and will only use the arbitration proceeding against the debtor as a means to determine what, if any, claims Blau has against the debtor and therefore the appropriate amount of a proof of claim to be filed with the court.

## CONCLUSIONS OF LAW

---

[1] In the motion for relief from stay, Blau states in a footnote that he also seeks relief from the stay for additional parties described in Appendix A attached to the motion which Blau represents in other cases filed against the debtor. The cases described in Appendix A are in various stages of litigation and arbitration. Without more information the Court makes no finding regarding these additional cases mentioned in the footnote and directs Blau to file a separate motion to lift the stay in those cases if the creditors in those cases wish to proceed against the debtor.

Case 09-80012-JAC    Doc 10    Filed 02/03/09    Entered 02/03/09 11:41:50    Desc Main
Document      Page 3 of 10

This Court has previously recognized the strong national policy favoring arbitration and held on several occasions that arbitration will be compelled where the parties have previously agreed to submit their claims to arbitration unless the party opposing arbitration is able to demonstrate that "Congress intended to preclude a waiver of the judicial remedies for the statutory rights at issue."[2] In *Whiting-Turner Contracting Co. v. Elec. Machinery Enters., Inc. (In re Elec. Machinery Enters., Inc.)*, 479 F.3d 791, 796 (11th Cir. 2007), the Eleventh Circuit recognized that "'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'"

In *Electric Machinery*, the debtor filed an adversary proceeding against a general contractor to compel turnover of money allegedly owed the debtor under its subcontract. The general contractor had settled a dispute with other parties and the debtor believed it was entitled to a portion of the funds. The general contractor moved to compel arbitration pursuant to the parties' arbitration agreement. The bankruptcy court found that the action presented a constructive trust situation because the general contractor collected money in settlement for itself and debtor. The court determined that it had jurisdiction over the res of the constructive trust and that determination of the amount of the res was a core proceeding. Finding the matter to be a core proceeding, the bankruptcy court denied the general contractor's motion to compel arbitration.

The Federal Arbitration Act provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract."[3] However, the Act's mandate may be overridden by contrary congressional command. To oppose arbitration, an opponent must prove "that Congress intended to preclude a waiver of judicial

---

[2] *White v. CitiFinancial Auto, Ltd. (In re White)*, 2006 WL 3694858 (Bankr. N.D. Ala. 2006)(quoting *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 227 (1987)).

[3] 9 U.S.C. § 2.

remedies for [the particular claim] at issue." The Supreme Court promulgated a three factor test in *Shearon/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987) in order to determine Congress' intent:

1. the text of the statute;

2. its legislative history; and

3. **whether 'an inherent conflict between arbitration and the underlying purposes [of the statute]' exists**.

Applying the *McMahon* factors in *Electric Machinery*, the Eleventh Circuit found no evidence within the Bankruptcy Code nor its legislative history that Congress intended to create an exception to the FAA in the Code. Therefore, in the bankruptcy context the question becomes whether "an inherent conflict exists between arbitration and the underlying purposes of the Bankruptcy Code."[4]

In *Electric Machinery*, the Eleventh Circuit explained that "[c]ourts addressing the issue of whether arbitration inherently conflicts with the Bankruptcy Code distinguish between core and non-core proceedings."[5] If a proceeding is a non-core proceeding, bankruptcy courts generally "do not have the discretion to decline to enforce an arbitration agreement."[6] If a proceeding is determined to be a core proceeding, the Eleventh Circuit noted that courts "must still analyze whether enforcing

---

[4] *Whiting-Turner Contracting Co. v. Elec. Machinery Enters., Inc. (In re Elec. Machinery Enters., Inc.)*, 479 F.3d 791, 796 (11th Cir. 2007).

[5] *Id.* at 796.

[6] *Id.*

5

a valid arbitration agreement would inherently conflict with the underlying purposes of the Bankruptcy Code."[7]

In *MJO Holding Corp. v. Welt (In re Happy Hocker Pawn Shop, Inc.)*, 212 Fed. Appx. 811 (11th Cir. 2006), the Eleventh Circuit explained that bankruptcy courts exercise jurisdiction in three categories of civil proceedings:

(1)  those that "arise under title 11,"

(2)  those that "arise in cases under title 11," and

(3)  those "related to cases under title 11." 28 U.S.C. § 1334(b).[8]

Section 157(b)(1) of Title 28 categorizes proceedings that "arise under title 11," or that "arise in a case under title 11" as core proceedings. Section 157(b)(2) provides a non-exclusive list of actions that qualify as "core proceedings," but the Eleventh Circuit has found that the most helpful explanation of what actions constitute a "core proceeding" appears in the Fifth Circuit decision *Wood v. Wood (In re Wood)*, 825 F.2d 90 (5th Cir. 1987), wherein the court explained that:

> "[if] the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding."

If a proceeding is not a core proceeding, bankruptcy courts have another potential source of jurisdiction over the proceeding under § 157(c)(1) which "sets the minium requirements for

---

[7]  *Id.*

[8]  *MJO Holding Corp. v. Welt (In re Happy Hocker Pawn Shop, Inc.)*, 212 Fed. Appx. 811, 816 (11th Cir. 2006).

6

bankruptcy jurisdiction."[9] To determine whether a bankruptcy court has related to jurisdiction over a proceeding, the Eleventh Circuit has adopted the Third Circuit test which asks "whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." In other words, the court must ask whether the outcome of the action could alter the debtor's rights, liabilities, options, or freedom of action.

In *Electric Machinery,* the Eleventh Circuit concluded that a determination of how much money the general contractor owed the debtor under their contractual agreement did not involve a right created by federal law and it was not a proceeding that would arise only in bankruptcy. It was an action that could have been brought whether or not the debtor had filed bankruptcy and it did not involve the traditional purpose of the bankruptcy court. The action was merely related to the bankruptcy case and not a core proceeding and, therefore, the debtor's claim was only related to its bankruptcy and was non-core and subject to arbitration.

In this case, the Court finds that this action is a non-core related to proceeding over which this Court does not have the discretion to deny the arbitration action to proceed. To the extent the claimants seek to proceed against Latham, the debtor's arbitration attorney, the Court further finds that the action is not even a related to proceeding over which this Court would have jurisdiction. The claimants have not filed a proof of claim in this case and concede that they are not seeking turnover of the settlement funds that were returned by Latham to the debtor which the Court affirmatively finds are property of the debtor's bankruptcy estate. Thus, the action does not fall within any of the categories listed under § 157(b)(2) as a core proceeding. The Court further finds that the proceeding does not involve a right created by the Bankruptcy Code nor is it one that would arise only in

---

[9] *Id.* at 818.

bankruptcy. The pending arbitration proceeding involves a pre-petition, state law claim arising out of conduct that occurred when the claimants purchased vehicles from the debtor. The claimants allege, both individually and on behalf of others similarly situated, that the debtor violated the Florida Motor Vehicle Retail Sales Finance Act when the debtor sold vehicles to the claimants. The action against the debtor and its surety, Fidelity, does not invoke a substantive right created by the Bankruptcy Code and it is not a proceeding that could arise only in bankruptcy. The action rests instead on a Florida statute and exists independently of the debtor's bankruptcy case. The action involves a dispute that is governed entirely by state law and same has been pending since 2001.

Even if this proceeding were determined to be a core proceeding, the Court finds that lifting the stay to allow the arbitration action to proceed would not inherently conflict with the underlying purposes of the Bankruptcy Code. The Court is mindful that in *Electric Machinery*, the Eleventh Circuit explained that "[o]nly if the bankruptcy court actually makes a sufficient finding that enforcing an arbitration agreement would inherently conflict with the Bankruptcy Code does it have the discretion to deny enforcement of the arbitration agreement."[10] Instead, the Court believes in this case that it will be helpful in the resolution of Riley and Silver's individual claims and as representatives of the putative class members in the arbitration proceeding to resolve all the claims therein. These prepetition claims clearly existed outside the bankruptcy case and are not based on any right created by the Bankruptcy Code. Although the outcome of the arbitration proceeding may have an impact on this estate to the extent the claimants are entitled to file a proof of claim for any damages awarded by the arbitrator in a final order, other courts have recognized that this limited

---

[10] *In re Elec. Machinery*, 479 F.3d at 799.

connection to a bankruptcy case is "too tangential to disregard the agreement to arbitrate and does not present an inherent conflict with the Bankruptcy Code."[11]

In the case of *Shores of Panama, Inc.*, 387 B.R. 864 (Bankr. N.D. Fla. 2008), the bankruptcy court found that allowing an arbitration action to proceed furthered the policy behind expedient and economic resolution of Chapter 11 reorganization cases where the parties had already initiated discovery in the arbitration proceeding. In this case, the parties have been involved in the arbitration proceeding for more than seven years.

In addition to the original allegations underlying the claimants' complaint against the debtor, Blau and the claimants also seek relief from the stay to proceed with "any incidental litigation in state court to confirm and enforce the Arbitration Award against the **Non-Debtor Respondents**, including Respondents' Counsel, pursuant to the Florida law, the Florida Arbitration Code and the parties' Settlement Agreement." (emphasis added) As noted above, any claims against the debtor's arbitration attorney are not even related to proceedings over which this Court would have jurisdiction. The debtor argues that stay relief should be denied because lifting the stay will require the debtor to expend its limited resources to go to Florida to defend the arbitration proceeding and to defend against Blau's claims against Latham and the debtor for allegedly breaching the settlement agreement reached therein. This arbitration proceeding has been pending however since 2001 and was near resolution when the debtor filed for bankruptcy relief. Indeed the parties were actively participating in the arbitration proceeding during the immediate months proceeding the petition date and were nearing settlement. Had the debtors not filed for bankruptcy

---

[11] *In re Shores of Panama, Inc.,* 387 B.R. 864, 867 (Bankr. N.D. Fla. 2008); *In re Martin*, 387 B.R. 307 (Bank. S.D. Ga. 2003)(finding an effect on the amount which will be distributed to creditors is not sufficient to bar arbitration).

9

protection it is very likely that the arbitration proceeding would now be concluded. The Court will, therefore, lift the stay and abstain to allow the parties to return to the arbitrator to finalize the arbitration proceeding and for Blau and the claimants to proceed against third-party non-debtors Fidelity and Latham with whatever rights and claims, if any, the claimants may have against same.[12] Upon entry of a final order entered by the arbitrator, the claimants will be entitled to file a claim in this case and may proceed against the third party non-debtors for collection, but the claimants are stayed from taking any collection actions against the debtor.

A separate order will be entered consistent with this opinion.

Dated: February 3, 2009

/s/ Jack Caddell
Jack Caddell
U.S. Bankruptcy Judge


JAC/mhb
xc:  Debtor(s)
     Derek Meek, attorney for debtor(s)
     J. Gordon Blau, attorney for defendants
     Richard Blythe, bankruptcy administrator

---

[12] *See* <u>Raven II Holdings v. W.S.F.-World Sports Fans, LLC (In re W.S.F. World Sports Fans, LLC.)</u>, 367 B.R. 786 (Bankr. D.N.M. 2007)(finding mandatory abstention applied to non-core state court action).